UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JEROME WOLFE | CIVIL ACTION |
| VERSUS | NO. 09-3366 |
| BURL CAIN, WARDEN | SECTION "I" (6) |

**SUPPLEMENTAL REPORT AND RECOMMENDATION**

On November 18, 2010, the undersigned magistrate judge issued a Report and Recommendation (rec. doc. 23), finding that petitioner's motion to stay should be denied and that petitioner's federal habeas corpus petition should be dismissed with prejudice. On December 3, 2010, petitioner filed Objections (rec. doc. 24) to the magistrate judge's finding that his habeas corpus petition should be dismissed with prejudice.[1] On December 15, 2010, the district judge issued an Order (rec. doc. 25) referring the matter to the undersigned magistrate judge for the purpose of "addressing the objections to the Report and Recommendation set forth by petitioner."

A review of petitioner's Objections reflects that he raises no arguments which he did

---

[1] In his Objections, petitioner presents no argument disputing the magistrate judge's finding that his motion to stay should be denied.

not raise in his habeas petition (rec. doc. 1). Petitioner once again argues that the trial court erred in admitting into evidence his mother's statement provided to police shortly after the murder wherein she stated that her son had killed her boyfriend. This statement was in contrast to Ms. Wolfe's trial testimony in which she stated that she could not remember what had occurred on the night at issue. In his Objections, petitioner provides that he "does not contest" the trial court's "authority" to admit his mother's prior statement into evidence. However, petitioner asserts that the trial court admitted the evidence for an unlawful purpose, namely, for the purpose of allowing the jury "to rely on [the statement] as substantive evidence thus defying established judicial regulations set by the Federal Constitution." (Rec. doc. 24, p. 3).

The undersigned magistrate judge determined that the above claim provided no basis upon which federal habeas corpus relief could be granted because petitioner was not denied a fair trial by virtue of the trial court's admission of Ms. Wolfe's statement. The court reasoned:

> Even without Ms. Wolfe's statement, the evidence of petitioner's guilt was overwhelming. Police officials found in petitioner's possession the gun which was used to murder the victim. Further, Ms. Wolfe's neighbor, Linda Smith, corroborated Wolfe's statement. Smith testified that Ms. Wolfe asked her to call 911 and in Smith's 911 call she informed that a lady's son had shot her boyfriend. Clearly, petitioner suffered no denial of due process by virtue of the trial court's evidentiary ruling.

(Rec. doc. 23, p. 12).

Regardless of the trial court's alleged "purpose" in admitting Ms. Wolfe's statement

into evidence, the fact remains that petitioner was not prejudiced by this admission. Accordingly, petitioner's claim for habeas relief is without merit.

Next, petitioner argues that his counsel was ineffective for failing to properly question the "testing methodology" which linked the bullets discovered in the victim to the gun discovered with petitioner. Counsel was also ineffective, according to petitioner, due to his failure to have the coroner specifically confirm that the bullets tested and linked to the gun found in petitioner's possession were the bullets which were retrieved from the victim's body. (Rec. doc. 24, p. 4).

Petitioner raised these exact same arguments in his habeas petition. Petitioner's claim that counsel was ineffective for failing to have the coroner confirm that the bullets, which ballistics testing proved came from the gun found in petitioner's possession, were the same bullets which were retrieved from the victim's body, was rejected by the undersigned magistrate judge based upon the following:

> The assistant coroner, Dr. Jay Brooks, testified that in connection with an autopsy that he performed on the victim, he removed two bullet fragments and provided them to Detective John Chapman. Detective Chapman, who attended the victim's autopsy, corroborated that he witnessed Dr. Brooks remove the bullet fragments from the victim, place the bullet fragments in vials, and then provide him with the vials. Chapman, in turn, provided the vials to the State Police Crime Lab for ballistics testing.

(Rec. doc. 23, pp. 14-15 (footnotes omitted)).

As for petitioner's claim that counsel was ineffective for failing to question the ballistics "testing methodology", as this court noted, in its Report and Recommendation,

Charles Watson, following a thorough examination, was accepted by the court as a ballistics expert. (State rec., vol. 2 of 5, pp. 518-537). Thereafter, Watson provided detailed testimony regarding his ballistics "testing methodology". Specifically, Watson testified that in determining whether bullets were fired from a particular gun, he uses a "water recovery tank" and a "comparison microscope." (State rec., vol. 2 of 5, p. 547). Watson stated that he fires bullets from the gun in question into the water recovery tank and this allows him "to recover those bullets undamaged." (State rec., vol. 2 of 5, p. 547). He then places those bullets, along with the bullets recovered from an autopsy or crime scene, on a comparison microscope and is able to match the bullets by virtue of their "striations". He explained that striations are "land and groove impressions" made on the bullet when it travels through a gun's barrel and that such impressions are unique, no two guns produce precisely the same striations. By microscopically comparing the bullets, he is able to ascertain whether they came from the same gun. (State rec., vol. 2 of 5, pp. 547-550).

In the instant matter, Watson fired the gun found in petitioner's possession into the water recovery tank and microscopically compared the fired bullets with the bullets obtained from the victim's autopsy. Watson concluded that the bullets obtained from the victim's autopsy were fired from the gun found in petitioner's possession. (State rec., vol. 2 of 5, p. 551).

Based upon the above, this court can find no basis upon which defense counsel could have lodged an objection to Mr. Watson's "testing methodology". The undersigned finds

4

that the arguments raised in petitioner's Objections, challenging the evidence linking the bullets recovered from the victim to the gun found in petitioner's possession, are without merit.

Finally, in his Objections, petitioner once again complains about the prosecutor's comment that petitioner's mother changed her testimony at trial, claiming that she could not recollect what happened on the night of the shooting, in an effort to protect her son. Petitioner contends that defense counsel was ineffective due to his failure to object to this comment. However, as the court determined in its original Report and Recommendation, the prosecutor's remark was not objectionable and, as such, defense counsel cannot be deemed ineffective for failing to object.

While it is true that it is improper for a prosecutor to offer his or her opinion regarding matters outside of the evidence presented at trial, a prosecutor is not prohibited from providing jurors with conclusions or inferences which he or she wishes the jury to draw from the evidence as long as those conclusions and/or inferences are grounded upon evidence. *United States v. Munoz*, 150 F.3d 401, 414 (5th Cir. 1998), *cert. denied*, 525 U.S. 1112, 119 S.Ct. 887, 142 L.Ed.2d 786 (1999). Such comments are not necessarily improper if it is apparent to the jury that the views are based on the evidence presented at trial rather than on personal knowledge of facts outside the record. *See, e.g., Nicolos v. Scott*, 69 F.3d 1255, 1282-1283 (5th Cir. 1995), *cert. denied*, 518 U.S. 1022, 116 S.Ct. 2559, 135 L.Ed.2d 1076 (1996); *State v. Sawyer*, 350 So.2d 611, 614 (La. 1977).

The comment about which petitioner complains was based upon evidence presented at trial rather than on any personal knowledge of facts outside the record. It was established at trial that Ms. Wolfe and petitioner were mother and son. Thus, the prosecutor's comment, that Ms. Wolfe was trying to protect her son by stating that she could not recollect what occurred at the time of the shooting, was merely an inference the prosecutor hoped jurors would draw based upon the established mother-son relationship. Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the Objections (rec. doc. 24), filed on December 3, 2010, be rejected, that the Report and Recommendation (rec. doc. 23), issued on November 18, 2010, be adopted, and that petitioner's application for federal habeas corpus relief (rec. doc. 1) be **DISMISSED WITH PREJUDICE** and that his motion to stay the instant action (rec. doc. 22) be **DENIED.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. §636(b)(1); *Douglass v. United*

*Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996)(*en banc*).[2]

New Orleans, Louisiana, this __25th__ day of _____January_____, 2011.

                                                   LOUIS MOORE, JR.
                                                   United States Magistrate Judge

---

[2]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.